## Summers v. Carpenter.

(Decided December 9, 1913).

### Appeal from Warren Circuit Court.

Fraud—Waiver of Right of Action for.—Appellee and a partner bought a saloon from appellant No. 14, 1910; thereafter appellee bought out his partner's interest, conducted the business alone for a time, then sold a half interest to another partner; re-purchased that interest; again conducted the business for a period by himself; and finally abandoned it, about March 1, 1911. He still owed appellant $250 on the original purchase price; and appellant

owned a note given by appellee when he purchased the interest of his first partner; appellee also owed appellant other sums of money loaned by appellant from time to time. Upon a settlement, appellee gave appellant a note for $1,100 securing same by mortgage on real estate. Held; that appellee was not entitled to cancellation of the note and mortgage; nor was he entitled to damages for fraud and deceit which he alleged appellant was guilty of in the sale of the saloon business to appellee.

BRADBURN & BASHAM for appellant.

SIMS & RODES for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing in part and affirming in part.

On November 14, 1910, appellant, L. B. Summers, was the owner of and conducted a saloon and lodging house business in the city of Indianapolis, which he sold on that day to appellee, H. E. Carpenter and Joseph C. Cullins, both of Warren County, Kentucky. Appellee and Cullins formed a partnership under the firm name of J. C. Cullins & Company, and proceeded to conduct said business. The purchase price thereof was $1,200; each of the partners paying one-half. Appellee gave his check for $100.00, and his note for $500.00, for his half; and Cullins assigned to appellant what is called in the record a "stud book" being certain accounts claimed by said Cullins to be due him from residents of Warren County who had bred their mares to Cullins' horse and jack.

Thereafter, appellee, Carpenter, bought out the half interest of his partner, Cullins, giving therefor his note in the sum of $415.00. Appellee then continued to conduct the business in his own name for a short time, when he formed a partnership with a man named Maxwell, taking said Maxwell's note for $600.00 in payment for the half interest sold him. This arrangement continued for a short time when appellee bought back the Maxwell half interest, returning the note for $600.00 and giving him $75.00 in addition. Thereafter appellee conducted the business alone until he finally abandoned it, the last of February, 1911, and returned to his former home in Warren County.

On February 28, 1911, appellant Summers and appellee Carpenter had a meeting at the Farmers Bank at Smith Grove, Warren County, Kentucky. Appellant in the meantime had become the owner of the $415.00 note which appellee had executed to Cullins as above men-

tioned. He had also advanced to appellee various sums of money from time to time; and appellee still owed a portion of the $500.00 note which he had given appellant at the time of the purchase of said business by him and Cullins. At that meeting, appellant and appellee had a full settlement of all their transactions, at the conclusion of which appellant gave appellee a check for $155.00 and appellee gave appellant his note for $1,100.00 and secured same by a mortgage on his real estate in Warren County.

On May 29, 1911, appellant brought a suit in the Warren Circuit Court against appellee, Carpenter, for $169.70, alleging that after the sale of said saloon business to J. C. Cullins & Co. they being unknown in Indianapolis, were unable to obtain credit and that appellant at the request of appellee, guaranteed to the American Brewing Company and to the Indianapolis Gas Co. the payment of such indebtedness as appellee's firm might incur to either of them; and that after appellee left that city, and after they had the settlement on February 28, above mentioned, appellant was compelled to and did pay $169.70 of said accounts, which appellee failed to pay; and appellant sued for reimbursement of said sums so paid by him.

On October 19, 1911, appellee filed an answer, counter-claim and set-off in said action, traversing the allegations in the petition, and setting up a claim for damages and for losses alleged to have been sustained by him because of false and fraudulent representations made to him by appellant in the sale of said saloon and lodging house business. Appellant moved the court to strike from this pleading all that part which attempted to plead a set-off to his action, which motion the court overruled.

In the meantime, on September 11, 1911, appellee had instituted in the Warren Circuit Court an action in *equity* against appellant, seeking cancellation of the note and mortgage for $1,100.00 above mentioned, upon the ground that appellant induced the execution thereof by false and fraudulent representations in the sale of said saloon business. Appellant answered on September 27, 1911, denying the allegations of the petition in respect to fraud.

On October 23, 1911, the court, on motion of appellee and over the objection of appellant, transferred the ordinary action to the equity docket and there consolidated it with the equity action above mentioned. The parties then proceeded to take their proof by deposition; and

the two actions having been heard together, the chancellor denied appellee's prayer for cancellation of the note and mortgage; denied appellant's claim for the $169.70 for reimbursement of amounts alleged to have been paid by him as guarantor for appellee; and awarded to appellee damages against appellant in the sum of $600.00 for deceit practiced by appellant in the sale of said saloon business. Hence this appeal.

Appellee claims that he was induced by appellant to go from his home in Warren County to Indianapolis, for the purpose of purchasing said saloon business; that after he arrived there, appellant made him drunk on bad whiskey; that he remained drunk from Friday until Monday morning; that on Monday morning after he had regained his wits, appellant told him that he (appellant) had sold the saloon business to him and Cullins at the price of $1,200.00; that, thereupon, being reluctant to repudiate his bargain, he entered into a written contract, taking over the business in connection with his partner Cullins, and paying appellant $100.00 by check, and giving appellant his note for $500.00. Appellee further claims that appellant represented to him and induced him to believe that it was a profitable business, of good standing and reputation. He also claims that appellant "salted the mine" by furnishing money to a number of his (appellant's) friends to spend at the bar in the presence of appellee in order to prove to appellee that it was a thriving concern. He also claims that the representations made were false; that it was not a good business, nor of good repute; that the lodging house was an assignation house run by appellant; that he was then, and for a long time prior thereto had been, permitting persons of opposite sex, both black and white, to gather there for immoral purposes; and that appellant was then keeping, rooming with and sleeping with a colored woman at said place. Appellee made many other charges against appellant, and proved about all of them, including the fact that appellant has with him now at Smith's Grove, Ky., in the ostensible capacity of housekeeper, the same negro woman above mentioned, though this latter was incompetent.

However, appellee admits that he had consumed a quantity of whiskey before leaving Kentucky on his trip to Indianapolis; that at the time he executed the contract for the purchase of said saloon business, he was sufficiently sober to know what he was doing; although he claims he did not want to purchase it, but sought to

make the best of a bad and fraudulent bargain. He also admits that he took possession of the said saloon on November 14, 1910, and conducted the business thereafter, buying out his first partner, then selling a half interest to a second partner and repurchasing it, thereafter conducting the said business alone, until about the last of February, 1911.

He also admits that he permitted appellant to remain with this colored woman at the same place and in the same way; and that he made no effort to prevent or put a stop to his other guests continuing the carousing and debauchery under the roof where he was in control, which had been inaugurated by his predecessor, the appellant. He also admits that he took no action to rescind the contract, nor at any time made any proposal to appellant to deliver back to him that which he had received; on the contrary, he purchased Cullins' interest and gave him a note therefor; and appellant being about to purchase said note from Cullins, appellee executed a new note to appellant in place of the one he had executed to Cullins. Moreover, after abandoning the business, he executed to appellant a new note for $1,100.00, covering all this indebtedness, including the $155.00 that day borrowed by him from appellant and secured same by a mortgage on his real estate.

While the judgment does not in express terms grant a rescission of the contract for the purchase of said saloon business, it does so in effect, by adjudging to appellee the amount he paid for his half interest originally purchased; and we think this was not authorized by the proof.

Appellee not only failed to assert his right to rescind, within a reasonable time, but he also waived his right of action for damages by the acts performed by him after discovery of the alleged fraud on the part of appellant. Even after he abandoned the said saloon business purchased by him from appellant, we find him near his home in Warren County, at the Farmers Bank in Smith's Grove, executing to appellant the note and mortgage sought now to be cancelled, and thereby condoning the alleged fraud, if any there was, and waiving any right of action he may have had arising therefrom. See 20 Cyc., 92.

Appellee claims that he was young, and that in all these transactions he remained under the seemingly

hypnotic control and influence of appellant, and that the execution of the eleven hundred dollar note and the mortgage to secure same, was obtained by reason of threats made by appellant to have him prosecuted for violating the laws of Indiana in the conduct of said business. But the evidence on these charges is not so convincing as it is on some of the other allegations and charges. He testified that he was thirty years of age, and on cross-examination, said:

"Q. Is your recollection good? A. Well not so good as it was when I was young. Q. You are young yet? A. I think I am getting old. Q. How old did you say you were? A. Thirty. Q. A young man? A. Yes, sir. Q. And you think you are getting old? A. Yes, sir. I feel that way. Q. And your memory is not like it was when you were younger? A. No, sir."

It is unreasonable to believe that appellee was afraid of appellant instituting proceedings against him in Indianapolis for violating the criminal laws of that city, or State, for his own testimony, if true, discloses that he was aware of the fact that appellant was the greater criminal of the two; and from a perusal of the testimony, one is easily convinced that he was old enough and had sense enough to know that appellant would be the last man to go to the criminal courts for redress.

So much of the judgment as awards appellee a judgment against appellant in the sum of $600 on his counterclaim is reversed, with directions to dismiss same.

The evidence in respect to appellant's claim for $169.70 being conflicting, the judgment of the chancellor dismissing appellant's petition seeking recovery thereof, is affirmed.

And that part of the judgment which dismisses appellee's petition seeking cancellation of the note and mortgage for $1,100.00 is also affirmed.